RANDY S. GROSSMAN
United States Attorney
JACLYN STAHL
Assistant United States Attorney
California Bar No. 295467
Office of the United States Attorney
880 Front St., Room 6293
San Diego, CA 92101
Tel: (619) 546-8456
Email: Jaclyn.Stahl@usdoj.gov

Attorneys for the United States

# UNITED STATES DISTRICT COURT

# SOUTHERN DISTRICT OF CALIFORNIA

| UNITED STATES OF AMERICA, | Case No.:  21-CR-2816-TWR |
|---|---|
| Plaintiff, | |
| v. | **UNITED STATES' SENTENCING MEMORANDUM** |
| VYVIANNA M. QUINONEZ, | Date:  May 27, 2022 |
| Defendant. | Time:  9:30 am |

The United States respectfully requests the Court sentence Vyvianna M. Quinonez to four months in custody and six months of home confinement. The parties jointly request that the Court impose: a $100 special assessment; a $5,000 fine; an order of restitution in the amount of $25,981.57; and three years of supervised release with a condition of 250 hours of community service for each year of supervision, anger management classes or counseling, and no flying on commercial aircraft for the term of supervision. The United States concurs with the other supervised release conditions set forth by probation in the presentence report. PSR at 19-20.

//
//
//
//

# ARGUMENT

The sentence recommended by the United States is sufficient but not greater than necessary considering the factors set forth in 18 U.S.C. § 3553(a).

## A.     NATURE AND CIRCUMSTANCES OF OFFENSE

### 1.     Quinonez assaulted flight attendant S.L.

On May 23, 2021, Vyvianna Quinonez was a passenger on Southwest Airlines Flight 700 from Sacramento International Airport to San Diego International Airport. She was sitting in seat 24D, which was the last aisle seat on the starboard side of the plane. Quinonez was accompanied by her sister who was sitting in the middle seat and her aunt who was sitting in the window seat. S.L. was the Southwest flight attendant working in the back of the airplane. Her coworkers, Flight Attendant 1 (FA1) and Flight Attendant 2 (FA2), were working as flight attendants in the front and middle of the plane. At that time, the Transportation Security Administration (TSA) mandated all passengers over the age of two wear a facemask in airports and on airplanes.

At the end of the flight and in preparation for landing, FA2 walked from the rear of the plane forward, collecting trash and checking passengers' seat belts, tray tables, and seat position—pursuant to Federal Aviation Administration (FAA) regulations. FA2 noticed Quinonez was not wearing her seatbelt and instructed Quinonez to put her seatbelt on; Quinonez did not comply. S.L. was also making routine checks. S.L. told Quinonez and her family to put their masks on, fasten their seat belts, and put their tray tables up. Quinonez did not comply and talked back to S.L., including shouting profanities. FA2 informed fellow flight attendant FA1 about Quinonez.

As the plane was in its final descent, S.L. observed that Quinonez was not wearing her facemask properly, did not have her seat belt fastened, and had her tray table down—all in violation of federal law. S.L. approached Quinonez and requested that she fasten her seatbelt, stow her tray table, and wear her facemask properly.

S.L. returned to her jump seat and requested that officers from the Harbor Police Department (HPD) be ready at the gate for a noncompliant passenger. Quinonez began

filming S.L. with her phone. *See* Exhibits 2 & 3 (video clips lodged with the Court). S.L. got out of her jump seat and approached Quinonez. S.L. attempted to block the camera with her hand, Quinonez grabbed S.L.'s wrist and pushed her away, and S.L. potentially made contact with the phone. S.L. said, "You do not push a flight attendant," or words to that effect. Around this time, the plane landed in San Diego.

A passenger a few rows ahead of Quinonez then filmed the following interaction between Quinonez and S.L. *See* Exhibit 1 (video lodged with the Court). S.L. stood in the aisle next to Quinonez, and Quinonez's sister and aunt yelled that they were going to sue S.L. Quinonez then suddenly stood up and violently assaulted S.L. Quinonez punched S.L. with a closed fist several times in the face and head and pulled her hair. S.L. put her hands up in defense but did not strike Quinonez. Quinonez's sister and aunt screamed for Quinonez to stop and grabbed at her shirt. The passenger sitting in front of Quinonez reached up and grabbed Quinonez's arm—she later told agents that she believed she "softened the blows." A male passenger, who was sitting in the middle seat in a row ahead of Quinonez on the opposite side of the plane, jumped up and got between Quinonez and S.L. and yelled at Quinonez to sit down. The male passenger told agents that S.L. was not aggressive, and that "there was no way possible" Quinonez could have been afraid of S.L. given their size difference. The male passenger also told agents that Quinonez said it was self-defense and when he told Quinonez it was a federal offense to attack a flight attendant she said, "I don't give a fuck."

2.  <u>S.L. sustained bodily injuries as a result of being assaulted by Quinonez.</u>

S.L. was taken to the emergency room following the assault. She sustained three chipped teeth (and eventually her two upper front teeth were replaced with crowns), a laceration under her left eye resulting in three stitches, a black and swollen left eye, and bruising on her right forearm in the shape of fingers. *See* Exhibit 4 (photographs of S.L.'s injuries, filed under seal). S.L. received ongoing treatment for her teeth by a dentist. She also took several months off work to recover physically and emotionally. S.L. intends to

address the Court at the sentencing hearing and will describe the serious and long-term impacts of this incident on her life. *See also* PSR at 9.

        3.    <u>Quinonez's assault and intimidation of S.L. interfered with and lessened S.L.'s ability to perform her duties.</u>

Quinonez's actions interfered with S.L.'s ability to perform her duties as a flight attendant. S.L. was unable to disarm and cross-check the two doors in the back of the airplane and make the corresponding announcement. This is an important safety step because if the doors are not disarmed, the emergency slide will deploy and could harm individuals cleaning and restocking the plane for the next flight. She was unable to assist with passengers exiting the aircraft, cleaning the aircraft, and checking the overhead bins of the aircraft—each an important customer service and safety role. The pilot also delayed taxiing to the gate to allow time for HPD to respond.

S.L. was unable to continue with the next flight given her injuries. FA2 was also unable to continue with the next flight due to emotional distress caused by witnessing Quinonez assaulting her co-worker. Southwest incurred $1,494.53 in extra staffing costs for two reserve flight attendants for the next scheduled flight. *See* Second Addendum to PSR. This cost, along with other costs incurred by Southwest are discussed below in the restitution section. A representative of Southwest Airlines will be attending the sentencing hearing and intends to make a statement on behalf of the airline victim.

**B.    HISTORY AND CHARACTERISTICS OF THE DEFENDANT**

Quinonez does not have any criminal history that scores, but after pleading guilty in this case and while on bond pending sentencing, she was arrested for a DUI. Her behavior was a serious breach of the Court's trust and evidences a lack of remorse for her conduct. On January 7, 2022, after Quinonez pleaded guilty, this Court held a status hearing regarding bond. ECF 42. After a lengthy hearing, this Court explained its concern that Quinonez may be a danger to the community given her conduct in this case. Based on extensive submissions and argument by the defense attesting to Quinonez's good character and the United States' non-opposition, ECF 40-41, the Court stated it was giving Quinonez

the benefit of the doubt and finding she met her burden by clear and convincing evidence that she was not a danger, ECF 49 at 2. Nine days later, Quinonez was arrested for driving under the influence, in violation of California Vehicle Code §§ 23152(a) & (b). ECF 45 at 2. Quinonez put others at risk by choosing to drive while intoxicated. Like her behavior in this case, it demonstrates an attitude that rules in place to protect others do not apply to her. Further, Quinonez's denials and excuses to the pretrial services officer after her arrest show a lack of remorse (e.g., blaming the incident on gastric bypass surgery). ECF-45 at 2-3.

On the other hand, Quinonez has demonstrated some mitigating characteristics. She has a supportive family—many of whom have accompanied her to every court date in this case. She has supplied the Court with letters and declarations from friends and community members attesting to her good character. ECF 40-41. The PSR discusses Quinonez's limited employment history and desire to start a business. PSR at 15. Quinonez does not claim to have an alcohol dependency and told the probation officer that she has never used illegal drugs. PSR at 14. However, it is noted that Quinonez has a citation for marijuana use in 2018. *Id.* Quinonez pled guilty early in the case, saving prosecution and judicial resources, and providing the victim with a swift resolution.

C.   **NEED FOR THE REQUESTED SENTENCE**

The requested sentence is appropriate to reflect the seriousness of the offense, promote respect for the law, and provide just punishment. A custodial sanction, along with the fine, restitution, and restrictive conditions of supervised release, will serve to deter Quinonez from future criminal behavior and protect the public. Further, Quinonez's sentence will serve as a general deterrent to others, especially given the video evidence in this case and widespread news coverage. This is particularly important given the rise in incidents aboard commercial aircraft and the danger criminal behavior aboard aircraft can pose to everyone who flies.[1] The sentence will also provide Quinonez with an opportunity to obtain educational and vocational training to aid in her goal of starting a business and

---

[1]   *See* https://www.faa.gov/data_research/passengers_cargo/unruly_passengers (last visited May 13, 2022).

receive anger management counseling. The requested sentence falls within the applicable guideline range, taking into account that Quinonez resolved this case quickly.

### D. THREE YEARS OF SUPERVISED RELEASE, A SPECIAL ASSESSMENT, AND A FINE ARE APPROPRIATE.

The parties jointly recommend three years of supervised release, a $100 special assessment, and a $5,000 fine. The same factors discussed above support the need for three years of supervised release. *See* 18 U.S.C. § 3583(c). Quinonez's violation of her bail just nine days after this Court permitted her to remain on bail weighs strongly in favor of supervised release as an added deterrent. Supervision will also protect society from further crimes by Quinonez. The parties jointly recommend 250 hours of community service for each year of supervision and anger management classes or counseling, which will assist Quinonez in understanding the consequences of her actions and caring for others in her community. Further the parties agree that Quinonez should be prohibited from traveling on commercial aircraft for the term of supervision. This will protect the public by keeping Quinonez out of the environment where this crime occurred and serve as a strong deterrent by restricting Quinonez's ability to travel. The Court should also impose all the conditions requested by probation. PSR at 19-20.

### E. RESTITUTION IS APPROPRIATE

Pursuant to 18 U.S.C. § 3663, the Court should order Quinonez to pay restitution to the victims in the amount of $25,981.57. *See* Second Addendum to PSR; Restitution Addendum to the Plea Agreement, ECF 34-1. This total accounts for S.L.'s injuries and inability to work, as well as financial costs incurred by Southwest Airlines.

//
//
//
//
//
//

## CONCLUSION

For the foregoing reasons, a sentence of 4 months in custody and 6 months of home confinement, three years of supervised release, a $100 special assessment, a $5,000 fine, and an order of restitution are appropriate. The Court should also impose all the conditions of supervised release recommended by probation and the parties.

DATED: May 20, 2022

Respectfully submitted,

RANDY S. GROSSMAN.
United States Attorney

/s/ Jaclyn Stahl
JACLYN STAHL
Assistant United States Attorney

Approved by DEZ 5/18/22