KNUT S. JOHNSON (CSB 125725)
LAW OFFICE OF KNUT S. JOHNSON
655 West Broadway, Suite 900
San Diego, California 92101
(619) 232-7080 (Phone)
knut@knutjohnson.com
Counsel for Vyvianna M. Quinonez

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF CALIFORNIA

(HONORABLE TODD W. ROBINSON)

| | |
|---|---|
| UNITED STATES,<br><br>    Plaintiff,<br><br>vs.<br><br>VYVIANNA M. QUINONEZ,<br><br>    Defendant. | CASE NO. 21-cr-02816-TWR<br><br>*SENTENCING MEMO*<br><br>Date: May 27, 2022<br>Time: 9:30 a.m. |

I.    Ms. Quinonez's character and response to her own conduct

Remorse, a significant indicator of rehabilitation, began for Ms. Quinonez the moment the incident ended and will continue for the rest of her life.  "[A] defendant's degree of remorse at sentencing may be considered as a basis for downward variance under § 3553(a) regardless of whether the defendant previously accepted responsibility." *United States v. Howe*, 543 F.3d 128, 138 (3d Cir. 2008).  But she has accepted responsibility fully.

And her character, outside this incident, has been outstanding.  This Court received an much information on the character of Ms. Quinonez attached to previous filings (docket entries 40 and 41).  Those declarations and letters from friends and family of Ms. Quinonez (most under penalty of perjury), who know her well are all are relevant, but a few are worth noting again.  For instance, attorney George Bakerjian (a personal friend who works for the California Parole Board), knows her very well and

1

21-cr-02816-TWR

has "never witnessed her be disrespectful, aggressive, or violent." Exhibit A.  He believes she has taken responsibility and "grown through her experience with this case" and that she has expressed a "deep sense of remorse and insight into her past mistake . . ."

Others note her gentle conduct (Exhibit G) and a California Department of Corrections Services and Rehabilitation employee wrote, " I would not invite anyone into my home that I believed was a danger to the safety of others or the community. I have never experienced her to be a threat, aggressive or violent. In fact, she is the opposite of those things, she is: kind, gentle, and extremely loving. She is an ethical human being that has never characterized herself to be any harm to people or the community" (Exhibit I).

A longtime friend, co-worker, and now sister-in-law, notes, " In high-stress work environments, I have personally seen her handle disruptive and offensive patrons with great fortitude and humility, all while maintaining a positive attitude." Exhibit J  And as noted by Mr. Bakerjian, she enrolled in anger management classes (before her arrest).  Exhibit O.

Most note her contrition and the uncharacteristic nature of this case.  In short, she is a good person who made a really big mistake in the heat of the moment, and who immediately regretted her mistake.  She has dedicated her adult life to her family, in particular the grandparents she cares for.  She volunteers for charitable causes.  And her conduct after this incident shows her character and contrition: she agrees to (and will) pay the restitution and fine at sentencing, relieving some of the victims' financial burdens; she pleaded guilty quickly, bringing closure to the victims, and; she continues (without Court order or supervision) to work on herself and responses to stressful situations.

What's more, she has now been in custody for three and a half months, including a short initial stay at the San Diego County Jail, and later (after this Court remanded her) in the Sacramento Jail, and then in U.S. Marshal Custody for transport to El Centro and then to jail in Arizona.  That custody and U.S. Marshal transport has been difficult and uncomfortable (U.S. Marshal transport typically includes being handcuffed and shackled for many hours while being bused from one location to another) but she thanked this Court for that "tough love that exposed me to challenges to change me from the inner core of my being for the better."  Docket entry 64.

She is thankful because her difficult and uncomfortable custody has also been good for her, as discussed in the under seal Psychological Report and in her letter to this Court.  While in custody, she has experienced difficult and frustrating situations with other inmates, including threatened violence.  And each time she has refused to respond violently or negatively – bringing her great pride in her newfound control and maturity.

She also learned much (and showed much of her character) from her work as a trustee in the Sacramento Jail.  At that jail, the correctional officers chose her to be a trustee when she quickly showed her ability to interact with other inmates (some challenging) in a positive way.  Her duties included working from very early in the morning to late at night, performing tasks the correctional officers did not want to do.  Among those tasks, she de-loused new inmates when needed, delivered food, and many other tedious and unpleasant tasks.  Her work took all day and into the night and put her into contact with all the female inmates.  And she is rightly proud that she could navigate tricky jail politics and avoid violent situations.

II. The collateral consequences of Ms. Quinonez's conduct

The collateral consequences to Ms. Quinonez have been severe. Her most immediate collateral consequence was that she became infamous on the internet and in the media for her crime. In fact, a simple Google search for her name shows over 3,000 results, none positive. YouTube, Facebook, Instagram, and other social media sites have almost endless discussions of her offense. Because of that publicity, she can never put this case fully behind her.

She is also being sued by the Federal Aviation Administration ("FAA"), whose initial demand was for over $24,000.00. She is subject to the FAA no-fly list.

III. Departures and variances

The parties agree on a two-level departure for expeditious resolution. In addition, if this Court departs one level, Ms. Quinonez will be in Zone B with a guideline range of 8-14 months. The Application Notes provide that the Court may impose a sentence of probation for offenders who are in Zone B. USSG § 5B1.1, Application Note 1.

Ms. Quinonez's post-offense personal rehabilitation supports a lower sentence. Although not typical rehabilitation, she strove to understand how to control herself in difficult situations while in jail, and has done so. Post-offense rehabilitation can provide the basis for a downward variance. *Gall v. United States*, 552 U.S. 38, 59 (2007). Ms. Quinonez started rehabilitation and personal growth with no court order.

As in *Gall*, Ms. Quinonez's attempt at personal rehabilitation and understanding was not "undertaken not at the direction of, or under supervision by, any court, but on [her] own initiative. *This also lends strong support to the conclusion that imprisonment was not necessary to deter Gall from engaging in future criminal conduct or to protect the public from his future criminal acts.*" *Id.* (emphasis added).

Ms. Quinonez understands that she was wrong and her behavior was unacceptable.  As with *Gall*, the fact that Ms. Quinonez  has been working on the reasons for this offense on her own initiative is "*strong support to the conclusion that imprisonment was not necessary to deter Gall from engaging in future criminal conduct or to protect the public from his future criminal acts.*"

IV.             The just sentence is time -served.

Title 18 U.S.C. § 3553(a)(2) address retribution, deterrence, incapacitation, and rehabilitation.  *See Tapia v. United States*, 564 U.S. 319, 325 (2011). This Court must impose a sentence that is sufficient, but not greater than necessary, to address these factors, "to the extent that they are applicable in light of all the circumstances of the case." *See* 18 U.S.C. §§ 3551(a), 3553(a); *Tapia*, 564 U.S. at 325.  Imprisonment can help and necessary to accomplish retribution and incapacitation, but it is not always necessary and appropriate to impose imprisonment.

Ms. Quinonez needs little incarceration, as probation (or supervised release) can significantly restriction his liberty.  The Supreme Court has recognized that supervision is a serious restriction on a liberty.  *See Gall*, 552 U.S. at 48.  Individuals on supervision are "nonetheless subject to several standard conditions that substantially restrict their liberty." *Id*.; *see also United States v. Knights*, 534 U.S. 112, 119 (2001) ("Inherent in the very nature of probation is that probationers do not enjoy the absolute liberty to which every citizen is entitled.") (internal citation and quotations omitted).

Thus, more than the time she has served is a punishment greater than necessary to accomplish the purposes of sentencing under 18 U.S.C. § 3553(a)(2).  This Court can achieve that sentence with a sentence of time served and the appropriate conditions of probation or supervised release.

## Conclusion

Ms. Quinonez asks the Court to sentence her to time-served and the terms of supervision she agreed to in the plea agreement.

Dated:    May 20, 2022                    Respectfully submitted,

<u>/s/ Knut Johnson</u>

Knut S. Johnson
Attorney for Vyvianna Quinonez